IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALLEGHENY TECHNOLOGIES,           )
INC.                              )
     Plaintiff,         )
                                  )
    v.              )  Civil Action No. 06-666
                                  )  Chief Judge Donetta W. Ambrose
STEVEN R. STRECKER                )  Magistrate Judge Lisa Pupo Lenihan
                                  )
     Defendant.         )

## REPORT AND RECOMMENDATION

## I.  RECOMMENDATION

   It is respectfully recommended that the Defendant's Motion to Dismiss and Alternative

Motion to Transfer be granted in the form of transfer of this action to the United States District

Court for the District of Oregon, under 28 U.S.C. § 1406(a), owing to improper venue.  It is

noted that, in the alternative, were venue properly laid in the Western District of Pennsylvania,

the Court would nonetheless have the authority to effect a discretionary transfer, under either 28

U.S.C. § 1404(a) or §1631, given the Report's assessment of the factors to be weighed and the

absence of specific personal jurisdiction over the Defendant.

## II. __REPORT__

This case is a Declaratory Judgement Action filed by Allegheny Technologies, Inc. ("Plaintiff" or "ATI") against its former employee, Steven R. Strecker ("Defendant" or "Strecker"), in connection with that employee's attempt, in 2006, to exercise stock options which ATI alleges to have expired in 2000.

Because (1) this Report concludes that this Court lacks specific personal jurisdiction over the Defendant and is, under 28 U.S.C. § 1391, an improper venue for this diversity-based action; and because (2) this Report further concludes that the action would be properly brought in Oregon - where Defendant filed a State Court action against ATI regarding the terms/conditions of his year 2000 termination of employment with Plaintiff's wholly-owned Oregon subsidiary, which action was removed by ATI to the Federal Court - it is recommended that the instant action be transferred to the Oregon District Court.

The Court notes that, while the case law regarding the most appropriate statutory authority for transfer in the absence of personal jurisdiction reflects somewhat disparate treatment between and within the Circuit Courts, there is support for transfer of this action under §1404(a), § 1406(a), and § 1631 as well. The Report recommends, following the Court's extensive review of the case law in these areas, that (a) the case should be transferred to the District of Oregon, and (b) the most appropriate authority given the circumstances of the case is § 1406(a), which governs transfer or dismissal in the event of improper venue in a case brought before the Federal Court.

A. **Statement of Facts**

This case is a declaratory judgment action filed by ATI in connection with Stecker's attempt, in early 2006, to exercise stock options alleged to have expired in 2000.  The pertinent facts are as follows:

In May, 1996, Strecker, a resident of Oregon, began employment with Oremet, an Oregon company, as its Director of Engineering.  Under the terms of his April 24, 1996 written Employment Agreement (the "Employment Agreement"), which includes choice of law and forum provisions, Strecker's employment and disputes "with respect to the subject matter of [the Employment] Agreement" are to be governed by Oregon law and litigated in Linn County, Oregon.  <u>See</u> Employment Agreement at ¶ 7.10. ***.  The Agreement requires that Strecker receive benefits in accordance with those provided to other employees.  It also provides that Strecker could be terminated without cause only upon six months' notice or by mutual written agreement.

In early 1998, Strecker's Oregon employer was acquired by Plaintiff ATI, a Delaware corporation with its principal place of business in Pennsylvania.  Shortly thereafter, ATI merged Oremet with another acquisition, Wah Chang, and consolidated the companies' names to "Oremet-Wah Chang" (hereafter "OWC").  On May 13th of that year, OWC and Strecker executed a written amendment to his Employment Agreement which increased his salary and reflected his participation in ATI's Bonus Program or Executive Compensation Program.  All other terms of the Employment Agreement remained in effect, including its choice of law and forum.

In addition, during 1998, Strecker began to be awarded stock options in ATI in accordance with the terms of a separate February 11, 1998 Stock Option Agreement (the "Stock Option Agreement" or "SOA") executed by ATI and Strecker.[1]  That Agreement notes that ATI had adopted an "Incentive Plan" for stock options to key employees.  And it provides that the option period would be ten (10) years, unless the employee was terminated for reason "other than death, disability or retirement", in which event the right to exercise any vested options would terminate thirty (30) days after the disqualifying event.  See §§ 4.1, 4.2. The SOA expressly defines "retirement" as "early or normal retirement under a pension plan *or* arrangement of [ATI] or one of its Subsidiaries in which the Optionee participates."  See §1(h).   Notice of an election to exercise vested options was to be provided to ATI at its Pennsylvania address, and Plaintiff asserts that Strecker signed the SOA in Oregon and returned it by mail to ATI's Pennsylvania address in 1998.  Finally, the SOA provides that it is to be governed by Delaware law; unlike the Employment Agreement, it contains no forum selection provision.  During 1998 and 1999, Strecker was awarded, pursuant to the SOA, a total of 18,504 stock options in ATI, with ten-year option expiration dates of 2008 and 2009, respectively.[2]

---

1.  See Stock Option Agreement attached as Exhibit 2 to Defendant's Brief in Support of Motion to Dismiss.

2.   The documents of record also indicate that Defendant's 1996 stock appreciation rights and options in Oremet under that company's plans were converted/recalculated to ATI stock options upon the 1998 acquisition, but that such stock options are not at issue because the Oremet plans expressly conditioned stock rights upon retirement at age 65.  As discussed, *infra*, Strecker was, at the time of the termination of his employment, within a few weeks of his 55th birthday.

Strecker asserts, and ATI does not dispute, that following ATI's acquisition of Ormet in 1998, Strecker continued his employment at the same Oregon location, under the management/direction of other Oregon employees, and reporting solely to Oregon personnel. Strecker's employment/personnel records continued to be compiled and retained by his Oregon employer.   He made a single trip to Pennsylvania shortly after the company was purchased to attend a one-night dinner meeting with ATI executives.

On February 8, 2000, OWC, as Defendant's employer, provided six months' notice to Strecker of his termination without cause, in accordance with the terms of the Employment Agreement.  Plaintiff asserts that Defendant's position was to be eliminated as part of a force reduction contemplated in late 1999 and early 2000; that other affected employees were terminated in February, 2000; and that Defendant was provided notice when it was discovered that such notice was required by the terms of his Employment Agreement.

The parties agree that a Memorandum of Understanding was executed by Strecker and his Oregon employer on June 28, 2000; that Strecker ceased active employment on that date; and that he was paid through the date of a six-month notice period, *i.e.*, through August 8, 2000.[3] Defendant alleges that he also received at least one "bridge" payment between that date and his commencement of deferred vested retirement benefits from Oremet a few weeks later, an assertion which Plaintiff disputes.

---

3.  Despite the parties' provision of several employment and stock option documents as attachments/exhibits to their various pleadings, neither party appears to have introduced the Memorandum of Understanding to the case record.  The Court is at a bit of a loss to understand the omission of what appears to be a central document to this dispute, particularly in light of both parties' election to include other documents.

Plaintiff now asserts that the August 8 termination date was "cut[] short" to June 28th in exchange for "an immediate lump-sum payment" of Strecker's salary and unused vacation "for the remainder of the original six-month period" and "agree[ment] that Strecker's employment with Oremet would end effective June 28, 2000." See Complaint at ¶ 24.  Plaintiff further asserts that, therefore, as Plaintiff had not yet attained age 55 (that birthday falling on September 18, 2000), his employment termination did not qualify as "retirement" under the ATI Stock Option Agreement and his options automatically forfeited.[4]

Defendant asserts, in contrast, that the Memorandum of Understanding (which has not been alleged to contain an exclusive agreement provision) reflects a "partial" documentation of his negotiated termination of employment, and that his express understanding with his OWC employer[5] was that he agreed to a June 28, 2000 termination as a "retirement", in slight advance of his 55th birthday, by arrangement with that wholly-owned subsidiary (as permitted under the SOA)  and on condition that his ATI stock options would thereby continue to vest as permitted under the SOA.

---

4.  Plaintiff's position appears, therefore, to be that Defendant agreed to his termination a few weeks prior to his early-retirement (i.e., age 55) birthday in exchange solely for payment, approximately 6 weeks early, of the remaining salary/vacation pay unequivocally due to him on August 8, 2000 under the six-month termination notice provisions of this employment Agreement.  Yet it would also appear that, had Plaintiff unilaterally terminated Strecker without cause on that date, Defendant would possess potentially cognizable claims under § 510 of ERISA (forbidding discrimination to prevent qualification for a protected benefit).

5.  Defendant maintains that the conditions of his termination were negotiated with OWC's Director of Human Resources, C.W. Stamps.

Following his termination of employment at the end of June, 2000, Strecker received three annual notices from ATI chronicling the continued vesting of his stock options - with complete vesting of the final portion noted in Plaintiff's last annual correspondence, in December, 2002.[6]  And in the Fall of 2003, ATI conveyed to Strecker its offer to purchase his options for $.10 per share - an offer to which Strecker did not respond.  The parties allege no further communication regarding Strecker's options for more than two years, during which time the value of ATI's stock increased dramatically, to over $85 per share.

In January, 2006, Strecker contacted ATI in Pennsylvania regarding his desire to exercise the stock options.  Over the course of that Winter and Spring, ATI maintained the position that Strecker's options had expired in 2000 and that its prior correspondence regarding vesting and repurchase were in error.  Strecker sought legal counsel, and communication regarding the parties' disparate positions on the matter was exchanged between their respective counsel for some interval prior to May 2, 2006.

By correspondence of May 2, 2006, Plaintiff's counsel informed Defendant's counsel By correspondence of May 5, 2006, Plaintiff's counsel informed Defendant's counsel that  the personnel files requested, and to which he was entitled "under the Oregon statutes", would be prepared for review and made available "by the appropriate persons in the [OWC] facility".  It further advised that Defendant was terminated with six month's notice by OWC  in accordance with the terms of his Employment Agreement and as part of a work force reduction.  In addition,

---

6. More specifically, by letter of December, 2000, ATI informed Strecker that 9,001 options were vested and exercisable.  By letter of December, 2001, it reported the same as to 15,170 options; and by letter of December, 2002, the company advised Strecker that all 18,504 options were vested and exercisable.

7

that correspondence indicates that "there was a suggestion that Defendant would voluntarily terminate and receive a buy-out of the remaining notice time", quotes the Memorandum of Understanding as providing that Strecker's "employment [would] end effective 28 June 2000", discusses his ineligibility for Pension Plan "retirement" at the time of his termination, and proposes an exchange of documents.

By correspondence of May 12, 2006, Defendant's counsel responded that Strecker voluntarily left OWC under the terms of a negotiated arrangment "clearly express[ing] Defendant's intention to retire", that bridge payments were made, and that this constituted "retirement by other arrangement" with the company. That correspondence also threatened to file suit in Linn County, Oregon - in accordance with the forum selection provisions of the Employment Agreement - if the dispute could not be resolved by May 27th.

### B.  Procedural History

On May 23, 2006, ATI filed this declaratory judgment action.  Thereafter, Defendant filed the Motion to Dismiss and Alternative Motion to Transfer before this Court and filed a breach of contract action in Oregon State Court.  The Oregon action was removed by the Plaintiff to the United District Court for the District of Oregon, which Court stayed the case on August 14, 2006, pending this Court's ruling on the aforesaid Motion.

The assertion of Plaintiff's declaratory judgment action, and its primary position in response(s) to Defendant's Motion, is that this is a stock option case turning on the right of exercise of options in a Delaware company with its principal place of business in Pennsylvania,

by notice to that company's Pennsylvania address, under an employee stock option plan administered in Pennsylvania, and involving stock option plan interpretation and administration witnesses and records maintained in Pennsylvania .  Plaintiff therefore maintains that this Court is a proper venue for the instant action - in which the Court's subject-matter jurisdiction is based solely on diversity, under 28 U.S.C. § 1332 - because both (a) a substantial part of the events giving rise to the claim occurred here, and (b) Defendant is subject to personal jurisdiction here. Plaintiff also asserts that, in considering transfer, this Court must give proper weight/deference to Plaintiff's choice of forum under the case law pertaining to discretionary transfers and under the "first-to-file" rule.

The assertions of Defendant's Motion to Dismiss and Alternative Motion to Transfer are that:

(1) this Court may not constitutionally exercise specific personal jurisdiction over Defendant, an Oregon resident and employee, owing to his insufficient minimum contacts with Pennsylvania and/or a resultant due process violation;

(2)  for numerous reasons of fairness, convenience, justness, efficiency, and other reasons of private and public interest, Oregon is a more appropriate forum for this action - turning on the conditions of  the termination of Defendant's Oregon employment pursuant to oral and written negotiations and agreement with other Oregon personnel, as reflected in records compiled and maintained in Oregon - and it ought therefore be either (a) dismissed under the doctrine of *forum non conveniens* or (b) transferred under 28 U.S.C. § 1404(a); and

(3) this Court should exercise its discretion under the Declaratory Judgment Act to dismiss this case owing to Plaintiff's procedural fencing and/or forum shopping, and in the interest of avoiding potential Oregon state law issues and duplicative/parallel court actions.

**C.  Motions to Dismiss or Transfer**

The Court considering a motion to dismiss "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

Once a defendant has filed a motion to dismiss for lack of jurisdiction, the plaintiff has the burden of proving, by a preponderance of the evidence, that jurisdiction exists in the forum state.  See, *e.g.*, IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 257 (3d Cir. 1998); Carteret Sav. Bank, F.A. v. Shushan, 941 F.2d 141, 146 (3d Cir. 1992)  Although the Court accepts the plaintiff's allegations as true and resolves all doubts in its favor, the plaintiff may not rest solely on the pleadings to satisfy its burden of proof.  See Pinker v. Roche Holdings, Ltd. 292 F.3d 361, 368 (3d Cir. 2002); Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Rather, the plaintiff must present evidence that demonstrates a *prima facie* case for the exercise of personal jurisdiction, *i.e.*, in a case of specific jurisdiction, sufficient minimum contacts.  See Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  If the plaintiff succeeds, the burden then rests with the defendant to demonstrate that an exercise of personal jurisdiction by the forum state  would nonetheless be violative of due process.

In reviewing a motion to dismiss on grounds of *forum non conveniens* or, in the alternative, transfer from a proper venue pursuant to 28 U.S.C. § 1404(a), the factors examined by the Court include convenience to the parties and witnesses, and the interests of justice.  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). The party seeking to transfer the case has the burden of establishing the need for transfer.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); id. at 875 (holding that, once court has determined that venue is proper, it must apply a balancing test to determine whether case should be transferred under § 1404(a)).

### D.  Statutory Provisions for Transfer

The language of 28 U.S.C. § 1404(a), which governs cases in which the forum court has proper venue, provides simply that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  As ATI observes, in the Third Circuit, a plaintiff's choice of forum is generally a significant consideration in deciding a discretionary motion to transfer under § 1404(a).  The Third Circuit has held that § 1404(a) is an appropriate authority for discretionary transfer where venue is proper, even if the forum Court lacks personal jurisdiction.  See United

States v. Berkowitz, 328 F.2d 358 (3d Cir. 1964).[7]  Where transfer is effected under § 1404(a),

the law of the transferor forum continues to apply, unless personal jurisdiction was lacking.[8]

In comparison, another statutory provision, 28 U.S.C. § 1406(a), authorizing transfer or

dismissal, is expressly applicable when venue is *improper*.[9]  See Goldlawr, Inc. v. Heiman, 369

U.S. 463, 466 (1962) (concluding that discretionary transfer under § 1406(a) does not require

personal jurisdiction); Andrews v. Compusa, Inc., 2000 WL 623234, *3 (E.D. Pa. May 12, 2000)

(collecting cases from other jurisdictions holding that § 1406(a) permits transfer absent personal

jurisdiction).  The Third Circuit has suggested that § 1406(a) is not only an appropriate basis for

transfer in the event of improper venue, but that - like § 1404(a) - it may also be used where

venue is *proper*.  See Carteret Savings Bank v. Shushan, 919 F.2d 225, 231 & n. 11 (3d Cir.

1990) (discussing previously "inconsistent conclusions" amongst district courts "on the question

of whether § 1406(a) authorizes a transfer when venue is proper").[10]  If venue is proper,

---

7.  See also Dollar Savings Bank v. First Security Bank, 746 F.2d 208, 214 (3d Cir. 1984)
(holding that if no personal jurisdiction is established, transfer under § 1404(a) is not precluded).
Cf. Molnlycke Health Care AB v. Dumex Med. Surg. Prods. Ltd., 64 F.Supp.2d 448 (E.D. Pa.
1999) (suggesting that, in the absence of personal jurisdiction, the Third Circuit had a
"preference" for transfer of cases under § 1404(a), but that such preference was subsequently
"thrown into doubt in recent years" by, *e.g.*, Carteret).  See discussion of § 1406, *infra*.

8.  See Reyno v. Piper Aircraft Co., 630 F.2d 149 (3d Cir. 1980) (explaining that exception
averts due process offense of applying law of state where defendant could not have been sued).

9.  "The District Court of a district in which is filed a case laying venue in the wrong division or
district shall dismiss or if it be in the interest of justice, transger such case to any district or
division in which it could have been brought."  28 U.S.C. § 1406(a).

10.  See also Imundo v. Pocono Palace, Inc., 2002 WL 31006143, *3 (D.N.J. Aug. 14, 2002)
(understanding Carteret to read the language of §1406 -specifically, the term "wrong district" - to
"appl[y] to any obstacle which prevents an orderly, expeditious, adjudication of a case on its
merits, including lack of personal jurisdiction *in an otherwise correct venue*") (emphasis added).
The Circuit Courts' varyingly broad interpretations of § 1406, and the ensuing interpretations of

(continued...)

however, transfer under § 1406(a) -rather than dismissal for lack of *in personum* jurisdiction - requires the plaintiff's consent.  Id. (explaining that this is so because the expansive reading of § 1406 is adopted as an equitable remedy to protect plaintiff from the running of the statute of limitations in another forum).  Where transfer is effected under § 1406(a), the law of the transferee state then applies.

Finally, 28 U.S.C. §1631, which was enacted as part of the Federal Courts Improvement Act of 1982, provides that whenever a "court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action could have been brought at the time it was filed."  The Third Circuit has indicated that this statute, too, may be an appropriate authority for transfer where the Court lacks personal jurisdiction.  See generally Chicosky v. Presbyterian Medical Center, 979 F.Supp. 316, 320 n. 3 (D.N.J. 1997) (discussing, at length, Third Circuit and other case authority for transfer absent personal jurisdiction under §§ 1404, 1406 or 1631); id. at 322, n. 5 (observing that "the weight of authority among courts in this circuit is that section 1631 does allow transfers where personal jurisdiction is lacking").

E.  **Analysis**

1.  **Constitutional Exercise of Specific Personal Jurisdiction**

---

10.  (...continued)

those interpretations, are somewhat opaque. Cf. generally, Antony L. Ryan, Principles of Forum Selection, 103 W. Va. L. Rev. 167, 179-180 (Winter 2000) (discussing blurring distinction between personal jurisdiction and venue).

### a.  Precondition of a Determination of Personal Jurisdiction; Overlap of Minimum Contacts and Venue Analysis

The necessity of resolving questions of jurisdiction prior to consideration of a Motion for Dismissal or Transfer of a case on grounds of *forum non conveniens* or under 28 U.S.C. §1404(a) has been addressed by several Circuit Courts with varying results.  The Court of Appeals for the Third Circuit, having considered the question as a matter of first impression in February of last year, held that a court must have concluded that it possesses personal jurisdiction over a defendant before considering the appropriateness of dismissal under the common law doctrine of *forum non conveniens*.  Malaysia Internat'l Shipping Corp. v. Sinochem Internat'l Co., Ltd., 436 F.3d 349 (3d Cir. 2006).[11]  In contrast, the Third Circuit previously held that a court need *not* reach such conclusion prior to effecting a § 1404(a) transfer of an action to another District Court.  See Berkowitz, 328 F.2d at 361 (concluding that district court has power to transfer under either 1404 or 1406 "whether the court in which [the case] was filed ha[s] personal jurisdiction or not") (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962)).

More imporantly for purposes of this case, however, a reading of the language of the statutory provisions regarding transfer suggests that - frequent indistinctness in their application notwithstanding - the applicability of one or the other, *i.e.*, § 1404(a) or § 1406(a), was intended to turn on proper venue.  And the question of venue, in this case premised solely on diversity, may rely on the establishment of personal jurisdiction through minimum contacts or a

---

11.  But see id. at 370 (Stapleton, J., dissenting) (concluding that "a court 'makes no assumption of law declaring power' when it decides not to exercise whatever jurisdiction it may have" and, accordingly, "a district court may dismiss on *forum non conveniens* grounds without first determining its own jurisdiction") (citations omitted).  While the United States Supreme Court granted certiori in that case on September 26, 2006, no decision has yet issued from that Court.

"substantial events" analysis addressed largely by consideration of the same allegations.  <u>See</u> 28

U.S.C. § 1391 (providing that venue in a diversity action may arise from (a) defendant's

residence in the forum state; (b) the occurrence of a "substantial part of the events or omissions

giving rise to the claim", or the situs of a substantial part of the property at issue, in the forum

state; or (c) defendant's proper subjection to personal jurisdiction in the forum state "if there is

no district in which the action may otherwise be brought"); <u>see</u> <u>also</u> discussion, *infra*.

 In light of the framing of Defendant's Motion and the Third Circuit's holding in

<u>Malaysia</u>, as well as other case law following that Court's decision in <u>Berkowitz</u>, but in light

most significantly of the overlapping analysis between an exercise of specific personal

jurisdiction and the existence of proper venue, this Report will first address whether Plaintiff has

made a *prima facie* showing that Strecker is properly subject to personal jurisdiction under the

law of the state where this Court sits, *i.e.*, Pennsylvania.  <u>See</u> <u>F/V Anna Maried, N.J. v. F/V</u>

<u>Anna Marie</u>**,** 2006 WL 995411, *1 n. 1 (D.N.J. April 11, 2006) (explaining that, although

transfer might be appropriate without regard to proper venue or personal jurisdiction, where the

defendants asserted lack of personal jurisdiction, and such "determination as to personal

jurisdiction will govern which provision - either 28 U.S.C. § 1404(a) or § 1406(a) - controls the

transfer analysis, that issue will be discussed at the outset") (citing <u>Jumara v. State Farm Ins. Co.</u>,

55 F.3d 873, 878 (3d Cir. 1995)); <u>United States Fire Ins. Co. v. Aldworth Co.</u>, 2005 WL

1522280, *2 (D.N.J. June 29, 2005) (same); <u>cf.</u> <u>Gallant v. Trustees of Columbia University in the</u>

City of  NewYork, 111 F.Supp.2d 638 (E.D. Pa. 2000) (holding that question of personal

jurisdiction should generally be decided before court turns to the issue of venue).[12]

**b. Considerations to an Exercise of Personal Jurisdiction by the Forum State**

Personal jurisdiction may be either general or specific.  General jurisdiction, established

when a defendant has engaged in "systematic and continuous" contacts with the forum state,[13] is

not alleged.  Specific jurisdiction is present when the claim is related to and *arises out of* a

defendant's "minimum contacts" with the forum such that he should reasonably anticipate being

haled into court there.  IMO Industries, 155 F.3d at 259; see also Remick v. Manfredy, 238 F.3d

248, 255 (3d Cir. 2001).[14]

As the Supreme Court and the Third Circuit have discussed, minimum contacts is a "fair

warning" requirement that must "take into account the relationship among the forum, the

defendant and the litigation".  Burger King Corp. v. Rudzewicz, 471 US. 462, 477 (1985);

Mellon Bank (east) PSFS, Nat'l Ass'n v. Farino , 960 F.2d 1217, 1221 (3d Cir. 1992).  It may be

"satisfied if the defendant has purposefully directed [his] activities at residents of the forum."

Burger King, 471 U.S. at 462 (quotations omitted).  Personal jurisdiction may be further

understood to require a showing of "'some act by which the defendant purposefully avails

[himself] of the privilege of conducting activities within the forum state, thus invoking the

---

12.  But cf. Elan Suisse Ltd. v. Christ, 2006 WL 3838237, *2 & n. 5 (E.D. Pa. Dec. 29, 2006)
(transferring action to Delaware, where defendant's litigation against plaintiff was pending,
under § 1404(a), without addressing absence of personal jurisdiction); id. (citing Berkowitz).

13.  Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984).

14.  Pennsylvania's long arm statute permits courts to exercise personal jurisdiction over
nonresident defendants "to the constitutional limits of the Due Process Clause of the Fourteenth
Amendment." Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998);
see also 42 Pa. Cons. Stat. Ann. § 5322(b) (2005).

benefits and protections of its laws.'"  <u>Toys 'R' Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 451 (3d

Cir. 2003) (quoting <u>Asahi Metal Indus. Co. v. Superior Ct.</u>, 480 U.S. 102, 109 (1987)); <u>see</u> <u>also</u>

Fed. R. Civ. P. 12(b)(2); <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291 (1980)

(holding that the contacts must demonstrate that defendant "has [purposefully] availed [him]self

of the benefits and protections of that state").  In contrast, specific jurisdiction cannot be the

"result of random, foruitous or attentuated contacts."  <u>Id.</u> at 475.  Nor may it be based upon the

"unilateral activity" of another.  <u>Id.</u>  The District Courts have been directed to "approach . . . each

case individually and take . . . a realistic approach to analyzing a defendant's contacts with a

forum."  <u>Miller</u> <u>Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 99-100 (3d Cir. 2004).[15]

### c.  Minimum Contacts Analysis

The question that must now be addressed is whether Streckler consented to

Pennsylvania's exercise of specific personal jurisdiction over him by deliberate contact with

regard to the substance of the cause of action - contact from which Defendant could reasonably

anticipate being haled into court in Pennsylvania.  Plaintiff notes that (1) Streckler was aware

that his post-aquisition employment in Oregon was with a wholly-owned subsidiary of a

Delaware company with its principal place of business in Pennsylvania, and that, consequently,

his stock options were in said parent company; (2)  Strecker knowingly returned his executed

SOA to the company's Pennsylvania address, received correspondence from Pennsylvania

documenting the vesting of his options; and (3) then contacted Plaintiff  - by telephone and

---

15.  <u>See</u> <u>also</u> <u>AMP Inc. v. Methode Elecs., Inc.</u>, 823 F.Supp. 259, 262 (M.D. Pa. 1993)
(observing that "[p]ersonal jurisdiction is a fact-specific inquiry" in which "[t]he focus is on the
relationship among the defendant, the forum state and the litigation").

correspondence - in Pennsylvania on several occasions in early 2006 for the purpose of exercising those options.[16]

Plaintiff contends that the Third Circuit and our sister Courts have looked to similar contact and found it supportive of an exercise of personal jurisdiction.  As Defendant notes, however, the cited cases are readily distinguishable.  See, *e.g.*, Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) (finding sufficient minimum contacts in RICO action where foreign defendants conducted extensive contract negotiations, by mail and phone, for foreign film rights they did not deliver and, at least in part, did not own) (citing Carteret and Lebel);[17] Rosen v. Solomon, 372 F.Supp. 915, 918-20 (E.D. Pa. 1974) (finding defendant issuer's default on stock options issued to Pennsylvania plaintiff caused harm in state, and exercising personal jurisdiction, where stock option agreement was negotiated by counsel in Pennsylvania, and contained provisions that it was "made and to be performed in" Pennsylvania and "construed in accordance with the laws" thereof);[18] Mellon Bank (EAST) PSFS Nat'l Assoc.

---

16.  To the extent that Plaintiff suggests that Defendant's contact with ATI in Pennsylvania for purposes of notifying it of Defendant's potential cause of action constitutes further consent to personal jurisdiction, this Report rejects such contention.   To the contrary, a potential claimant's notification to a perceived wrongdoer of its wrongdoing should provide no basis for subjecting that claimant to specific personal jurisdiction in the forum of the potential defendant's principal place of business**.**  Cf. Lawman Armor Corp. v. Simon, 319 F.Supp.2d 499, 503-04 (E.D. Pa. 2004) (declining to base jurisdiction on defendant's correspondence alleging infringement and offering to license, and noting that "attempt[s] to avoid a future . . . dispute" or "cease-and-desist" letters do not give rise to personal jurisdiction).

17.  The fraudulent nature of the contract negotiations is significant.  See *infra* n. 22.  The Grand Entertainment Court also noted the absence of evidence in that case of an "interest superior" in any other forum.  See 988 F.2d at 484.

18.  See also id. at 920 ("Pennsylvania has a clear interest in the enforcement of contracts negotiated in Pennsylvania and governed by its law.").  Compare Jaffe v. Julien, 754 F.Supp. 49

(continued...)

v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (finding "close case" in favor of personal

jurisdiction in breach of contract action by bank against non-resident limited-partnership loan

guarantors, where Virginia defendants *chose to solicit* Pennsylvania bank, noting that "[i]t was

the defendants who approached Mellon and through this contact established a business

relationship with a Pennsylvania entity");[19] Executive Sounding Board Assocs. v. Barnett, 1997

WL 47534, *4 (E.D. Pa. Feb. 4, 1997) (finding jurisdiction over former employees in breach of

contract action by consulting firm where employment agreement expressly provided for services

to be performed in Pennsylvania, binding arbitration in Philadelphia, and government by

Pennsylvania law); Qwest Communications Int'l, Inc. v. Thomas, 52 F.Supp.2d 1200, 1205 (D.

Colo. 1999) (concluding that Ohio-resident executive employee, who (a) entered employment

contract with Colorado-resident employer, (b) discussed contractual employment rights with

employer while in Colorado, and (c) performed work at corporate headquarters in Denver "as

part of his executive duties and responsibilities", was subject to personal jurisdiction in

Colorado); id. (declining, nonetheless, to exercise jurisdiction in employer's declaratory

---

18.  (...continued)
(E.D. Pa. Jan. 11, 1991) (transferring breach of fee referral agreement case brought by
Pennsylvania attorney, concluding that Pennsylvania lacked personal jurisdiction over New York
attorneys who negotiated contract in New York for work in New York on behalf of New York
clients); id. at 53 (concluding that solicitation and negotiation of agreement in New York
"weigh[ed]  heavily" against a finding of personal jurisdiction in Pennsylvania).

19.  See also  id. at 1221-23 (noting that "each case must be judged on its particular facts" and
that, in determining whether relationship among defendant, cause of action and forum meets
minimum contacts, courts look to terms of agreement, place and character of prior negotiations,
contemplated future consequences and course of dealings); id. at 1223 (concluding that
defendants chose to "purposefully direct[] their activities toward a Pennsylvania resident and
thereby availed themselves of the opportunity to do business there within the meaning of *Burger
King*") .

judgment action regarding effect of corporate merger on employee's stock options where filing of such action following defendant's demand letters constituted "procedural fencing").

The Report further observes that this case involves a question of continuing stock option rights that turns fundamentally *not* on issues of stock option agreement terms, interpretation or administration, but on disputed facts as to the conditions of the termination of Defendant's Oregon employment, *i.e.*, the agreement(s) between Strecker and OWC reflected, in whole or part, in the June, 2000 Memorandum of Understanding.  It is on the disputed nature of *these events - i.e.*, Strecker's termination versus retirement by arrangement with OWC - that Plaintiff's cause of action rests.[20]

In addition, several decisions not cited by either party counsel against a finding of sufficient minimum contacts in the case *sub judice*.  For these cases support this Report's conclusion that the Court should look to Strecker's Oregon residency and pre-existing employment relationship with Oremet; the fact that Strecker played no role in ATI's acquisition of Oremet; Strecker's continued, exclusively-Oregon employment by OWC; ATI's execution of an Employment Agreement retaining Oregon choice of law and forum provisions; the absence of any election of Pennsylvania choice of law or forum provisions in any other document/contract

---

20.  Plaintiff does not dispute that the Stock Option Agreement permitted "retirement" by virtue of *either* (a) early or normal retirement under the terms of the Pension Plan *or* (b) *arrangement with its subsidiary, OWC*.  Rather, it alleges that OWC, in terminating Strecker in the Summer of 2000, agreed to no such arrangement.  And Strecker proffers evidence to the contrary.  Cf. Jaffe v. Julien, 754 F.Supp. 49, (E.D. Pa. 1991) (noting that, under minimum contacts analysis, cause of action must arise from defendant's activities within forum state).  Plaintiff's protestations notwithstanding, the "gravamen of this dispute" is *not* "interpretation of the ATI stock option agreements".  See Plaintiff's Brief in Response to Motion to Dismiss at 9.  Compare Grand Entertainment, 988 F.2d at 483 (noting that "the instant dispute [arose] directly out of the contacts at issue").

between the parties; more generally, the expectations and understandings as to the situs of their

business dealings, as reflected in the parties' agreements; and, finally, the negotiation and

execution of Strecker's termination of employment in Oregon by Oregon personnel.  More

particularly:

> Our sister Court in the Eastern District recently held that
>
> where the only contacts an out of state defendant has with the forum state are that
> it concluded a contract with a forum state plaintiff and sent some related
> communications to that plaintiff, and where the contract negotiations were
> initiated by the plaintiff, the contract is to be performed entirely outside the forum
> state, the contract does not contain a choice-of-law clause designating the
> application of forum state law, and the contract does not create long-term or
> substantial ties with the forum state, the defendant does not have sufficient
> contacts . . . .

 Rotondo Weinreich Enterprises, Inc. v. Rock City Mechanical, Inc., 2005 WL 119571, *6 (E.D.

Pa. Jan 19, 2005) (concluding that the court lacked personal jurisdiction over Tennessee

defendant negotiating subcontract construction work to be performed in Kentucky for

Pennsylvania plaintiff, and granting motion to dismiss).  In reaching its decision, the Rotondo

Court noted that the defendant exchanged correspondence and contract documents with plaintiff

in Pennsylvania,  had "numerous conversations" by telephone, and exchanged e-mail "in an

effort to finalize the contract process" with plaintiff.  It concluded, however, that such contacts

were insufficient to demonstrate that defendant "purposefully availed itself of the privilege of

conducting activities in Pennsylvania sufficient to subject it to the exercise of personal

jurisdiction in this Commonwealth." Id. at *5 (citing Burger King, 471 U.S. 476)  See also id.

("Moreover, the contract at hand did not anticipate that any part of its performance would take

place in Pennsylvania.").

Similarly, in <u>Novacare, Inc. v. Strategic Theracare Alliance</u>, our sister court in the Eastern District of Pennsylvania concluded that it lacked personal jurisdiction over the defendant California residents, whose contracts to provide therapy services at nursing homes in California were made with a Pennsylvania corporation; contained notice provisions indicating the plaintiff's Pennsylvania address; contained Pennsylvania choice of law provisions; and resulted in significant correspondence, payments by check, and occasional telephone contact - each by the defendant to the plaintiff in Pennsylvania.  1999 WL 259848 (E.D. Pa. April 30, 1999).  In discussing its obligation to consider "contractual negotiations and contemplated consequences" rather than simply the existence of an agreement, the Court noted that a finding of personal jurisdiction in those circumstances could not be justified.  <u>Id.</u> at *7.  <u>See</u> <u>also</u> <u>id.</u> at *8 (finding no evidence  that defendant purposefully created a "substantial connection" with the forum state sufficient to support personal jurisdiction); <u>id.</u> (explaining that while phone calls and letters may be counted toward the minimum contacts necessary for jurisdiction, they are insufficient when taken alone, and do not constitute a sufficient connect for personal jurisdiction) (citing <u>Banyan Healthcare Servs, Inc. v. Laing</u>, 1998 WL 633991 (E.D. Pa. Aug. 20, 1998); <u>Grand Ent. Group, Ltd. v. Star Media Sales, Inc.</u>, 988 F.2d 476, 482 (3d Cir. 1993); <u>Lynch v. N.J. Auto. Full Ins. Underwriting Ass'n</u>, 762 F.Supp. 101, 104 (E.D. Pa. 1991));[21] <u>id.</u> at *7 (declining "[t]o allow

---

21.  <u>Compare</u> <u>Lebel v. Everglades Marina, Inc.</u>, 558 A.2d 1252 (N.J. 1989) (exercising personal jurisdiction over Florida defendant alleged to commit fraud in boat sale to New Jersey resident based on telephone calls to, and receipt/execution of agreement in, New Jersey); <u>id.</u> at 1256 ("Remember that in this case it is alleged that the defendant's representations via mail and telephone to New Jersey were fraudulent.").  <u>See</u> <u>also</u> <u>Carteret Savings Bank v. Shushan</u>, 954 F.2d 141, 147 (3d Cir. 1992) (discussing <u>Lebel</u> in context of jurisdiction based on a tortious act committed within the state, constituting a jurisdictional predicate consistent with due process).

(continued...)

22

[plaintiff] to rely on the fact that [d]efendants entered into a contract with it as a basis for jurisdiction" where Court concluded that underlying agreements gave defendants no "reason to contemplate any consequences" within Pennsylvania).

Finally, in Arms, Inc. v. Sedona Research, Inc., the District of New Jersey Court noted the post-acquisition relationship of the parties in concluding that it lacked specific personal jurisdiction over the Virginia corporate defendant.  Arms, 1993 WL 534361, *3 (noting that "[p]rior negotiations between the parties were minimal, with the New Jersey plaintiff  . . . steeping into the shoes [of the original contractor]"); id. at n. 4 (explaining that the original contractor was acquired by the plaintiff); id. at *3 (noting "nothing in the course of dealing between the parties that indicate[d] defendant's intent to avail itself of the benefits and protection of New Jersey law" and describing any contact with New Jersey as "fortuitous"); id. (concluding that consulting agreement with New Jersey corporation which (1) was approved in New Jersey, (2) with necessary subsequent documentation submitted to New Jersey, and (3) "administrative services" performed in New Jersey, was insufficient basis for personal jurisdiction where contract was negotiated with Virginia-based employees, entered into in Virginia, and for work to be done in Virginia).[22]

---

21. (...continued)
 Cf. generally IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 n. 3 (3d Cir. 1998) (holding that "[t]he weight of authority among the courts of appeal is that minimal communication between the defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system") (citing cases therein).

22. As noted elsewhere in this Report, our sister court in the District of New Jersey therefore transferred the case under § 1404(a).

 Cf. generally Burger King, 471 U.S. at 478 (counseling district courts to take a "highly
(continued...)

Accordingly, this Report concludes that ATI's presence and stock option administration in Pennsylvania; inclusion of Pennsylvania identification and notice provisions in the Stock Option Agreement; and the alleged stock-option-related telephone and correspondence contact between Strecker and the entity which acquired his Oregon employer; are insufficient to support an exercise of specific personal jurisdiction as to this declaratory judgment action turning on the terms of Strecker's termination with OWC, and that Plaintiff has failed to meet its burden of establishing sufficient minimum contacts in the face of a personal jurisdiction challenge.

### d.  Constitutional Exercise in the Presence of Sufficient Minimum Contacts

The Report further concludes that, even  had Plaintiff established sufficient minimum contacts, this Court could not constitutionally proceed to exercise jurisdiction over Defendant. For once minimum contacts with the forum state are established, jurisdiction may be exercised only so long as to do so comports with "traditional notions of fair play and substantial justice." Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods., Co., 75 F.3d 147, 150-51 (3d Cir. 1996) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

More particularly, the burden of proof is then on the defendant to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable.  See Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir., 2001).  And the factors to be considered in this component of the jurisdictional test are: (a) the burden on the Defendant; (b) the forum state's interests in adjudicating the dispute; (c) the Plaintiff's interest in obtaining

---

22.  (...continued)
realistic" approach to evaluating relationships for purposes of personal jurisdiction, and to recognize that the contemplated consequences of a contract are themselves the real object of a transaction).

efficient resolution of the controversies; and (d) the shared  interests of the judiciary and States in promoting efficiency and furthering fundamental social policy.[23]  Had Plaintiff established sufficient contacts, these factors would nonetheless weigh, on balance in this case, against an exercise of personal jurisdiction.

Applying the factors above, it appears that (a) Defendant would be substantially burdened by defending this declaratory judgment action in Pennsylvania; (b) as ATI, although a Delaware corporation, has its principal place of business in Pennsylvania, that State has *some* interest in providing a forum to Plaintiff and protecting it from conduct alleged to threaten harm in Pennsylvania (*i.e.*, a demand for an expenditure from corporate funds, the right to which is challenged);[24] (c) Plaintiff's interest in obtaining efficient resolution does not depend on maintenance of this action in this forum where a related action is before the District Court of Oregon and has only been stayed pending this Court's decision on the Motion for Dismissal or Alternative Transfer; and (d) interests of efficiency and general social policy favor resolution of the parties' underlying disputes in the District Court of Oregon.[25]

---

23.  See, *e.g.*, Miller Yacht Sales, 384 F.3d at 97 (quoting Burger King, 471 U.S. at 477).

24.  But compare Trueposition, Inc. v. Sunon, Inc., 2006 WL 1686635 (E.D. Pa. June 14, 2006) (concluding that Pennsylvania had a "strong" interest in protecting a Delaware corporation with its principal place of business in Pennsylvania "when, as in [that] case, a substantial part of the events giving rise to plaintiff's claims occurred in Pennsylvania").

25.  More particularly, the parties concur that Defendant's personnel records are located in Oregon.  It is also undisputed that Defendant's employment was terminated in Oregon by Oregon personnel.  Defendant alleges oral negotiation and agreement with individuals employed in Oregon, the terms of which are central to his continued right to exercise the stock options at issue.  To the extent that any witnesses with information regarding Defendant's termination and/or retirement are, as Defendant alleges, no longer employed by Plaintiff or its wholly-owned subsidiaries, but still resident in Oregon, this Court will have no authority to compel their attendance at trial.  See Affidavit of  Strecker in Support of Motion to Dismiss at ¶ 19; Fed. R.

(continued...)

For these reasons, the Report concludes that Defendant is not and should not be subject to personal jurisdiction in Pennsylvania.

**2. Dismissal under the Common Law Doctrine of *Forum Non Conveniens* or Transfer under Statutory Provisions**

**a. General Background**

In federal courts, the common law doctrine of *forum non conveniens* now serves a limited purpose, and is generally employed by a District Court to dismiss a case when the more convenient forum is in a foreign country.  See, *e.g.*, Toll Bros., Inc. v. Nationwide Property & Casualty Ins. Co., 2005 WL 2600207, at *2 n. 1 (E.D. Pa. Oct. 13, 2005) (noting that "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad").

Other similar considerations are now often governed by the statutory provisions of 28 U.S.C. § 1404(a), which authorizes a District Court with proper venue to transfer a case to

---

25. (...continued)
Civ. P. 45.  In addition, to the extent the underlying issue - *i.e.*, the terms of the agreement reached between Defendant and OWC in Oregon in Summer, 2000, which agreement has not been alleged to specify any choice of law or forum - is controlled by Oregon law, the Oregon District Court possesses far superior knowledge and familiarity.  And finally, Oregon's interest in these matters is significantly stronger than Pennsylvania's.

On the issue of controlling law, the Report notes that, although ERISA has not yet been raised by either party, the case may - because of its nexus to an ERISA benefit plan, *i.e.*, the Stock Incentive Plan - entail questions of federal pension and employment law.  While it was not necessary for the Court to research ERISA considerations for purposes of this Report and Recommendation, it notes the possible implication of matters generally governed exclusively by ERISA, *e.g.*, (a) conditioning a valuable right (such as, perhaps, holding an option open) on retirement versus other termination of employment, and/or (b) fiduciary duties under ERISA to inform employees with respect to a change in (*e.g.*, expiration of) retirement/pension benefits.  See generally Variety Corp v. Howe, 516 U.S. 489 (1996).

another District Court "for the convenience of the parties and witnesses" and "in the interest of justice."   Whether or not this provision is applicable to transfers in the absence of personal jurisdiction is a matter of some controversy.  There is, however, significant authority within the Third Circuit for application of § 1404(a) where venue is proper but personal jurisdiction is lacking.  See United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964); Gehling v. St. George's School of Medicine, 773 F.2d 539 (3d Cir. 1985); Reyno v. Piper Aircraft Co., 630 F.2d 149, 164-65 (3d Cir. 1980) rev'd on other grounds, 434 U.S. 235 (1981).  And District Courts within the Circuit have continued to effect transfers, absent personal jurisdiction, under §1404(a).  See, e.g., Chicosky, 979 F.Supp. at 320; Molnlycke, 64 F.Supp.2d 448 (transferring case under § 1404(a) in absence of personal jurisdiction); Novacare, 1999 WL 259848, *11 (concluding that court may transfer under §1404(a), as well as § 1631, to "cure a defect in personal jurisdiction");  Arms, 1993 WL 534361, *3 (concluding that "[a] court that has subject matter jurisdiction over an action and that is a proper venue may transfer the action under 28 U.S.C. § 1404(a) even if the court lacks in personum jurisdiction").

In addition, as noted supra, § 1406 is expressly directed to cases of improper venue, and has been held applicable where the forum court also lacks personal jurisdiction.  See Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962).  It may also be applicable where venue is "otherwise proper" but personal jurisdiction is lacking.  See Carteret Sav. Bank, FA v. Shushan, 919 F.2d 225, 232 (3d Cir. 1990).

Finally, the Report  notes that actions in this Circuit have also been transferred under § 1631 in the absence of personal jurisdiction.  See, e.g., Lawman Armor Corp. v. Simon, 319

F.Supp.2d 499 (E.D. Pa. 2004); <u>Chicosky v. Presbyterian Medical Center</u>, 979 F.Supp. 316, 322 n. 5 (D. N.J. 1997) (concluding that "the weight of authority among courts in [the Third] Circuit is that § 1631 [allows] transfers where personal jurisdiction is lacking"); <u>Arms, Inc. v. Sedona Research, Inc.</u>, 1993 WL 534361 (D.N.J. 1993) ("Indeed, cases in the Third Circuit have suggested that § 1631 is an appropriate provision for transferring cases to another federal district where the transferor court lacks *in personam* jurisdiction."); <u>id.</u> (transferring action under § 1631, rather than transferring or dismissing under § 1404(a), as defendant had requested).[26]

---

26.  <u>See</u> <u>also</u> <u>Renner v. Lanard Toys, Ltd.</u>, 33 F.3d 277, 284 (3d Cir. 1994) (remanding with instruction that if plaintiff failed to establish minimum contacts, District Court could consider transfer under § 1631); <u>Mellon Bank v. DiVeronica Bros., Inc.</u>, 983 F.2d 551, 558, n. 3 (3d Cir. 1993) (remanding case lacking personal jurisdiction with instruction that District Court could, in its discretion, transfer under § 1631).  Numerous more recent cases have continued to understand Third Circuit precedent as authorizing a transfer under § 1631 for want of personal jurisdiction. <u>See, *e.g.*</u>, <u>Imundo v. Pocono Palace, Inc.</u>, 2002 WL 31006143, *3 (D.N.J., Aug. 14, 2002) (recognizing power under both § 1404(a) and § 1631 to transfer instead of dismiss); <u>Zieper v. Reno</u>, 111 F.Supp.2d 484, 492 (D.N.J. 2000); <u>Valdivia v. INS</u>, 80 F.Supp.2d 326, 333 (D.N.J. 2000) (transferred to cure want of personal jurisdiction in accordance with discretion under § 1631).

However, while the text § 1631 does not distinguish between subject matter and *in personam* jurisdiction, some case law suggests that § 1631 may apply only where the Court lacks *subject matter*, as opposed to personal, jurisdiction.  <u>See</u> <u>McTyre v. Broward General Med. Center</u>, 749 F.Supp. 102 (D.N.J. 1990); <u>cf.</u> <u>Gallant v. Trustees of Columbia University in the City of New York</u>, 111 F.Supp.2d 638, 647-48 (E.D. Pa. 2000) (discussing Circuit split on this question and characterizing the Third Circuit's holdings as "suggest[ing] application absent personal jurisdiction in *dicta"*, but "not confront[ing] this question squarely").  In addition, the legislative history reflects Congressional concern with resolving confusion as to "which of two or more federal courts . . . ha[s] subject matter jurisdiction over certain categories of civil actions."  S. Rep. No. 97-275, 97th Cong., 2d Sess. 11, *reprinted in* 1992 U.S.C.C.A.N. 11, 21.  Several commentators have therefore questioned its application in the absence of personal jurisdiction.  <u>See, *e.g.*</u>, Charles A. Wright, <u>Federal Practice and Procedure</u> § 3842, 323 (2d ed. 1986); 1A J. Moore, <u>Moore's Federal Practice</u> ¶ 0.346[9], 1440.  <u>See generally</u> Jeremy J. Butler, <u>Venue Transfer When a Court Lacks Personal Jurisdiction: Where are Courts Going With 28 U.S.C. § 1631?</u>, 40 Val. U.L.R. 789 (Summer 2006).

**b.  Transfer Analysis**

**(i) Recommendation of Transfer Under § 1406(a) in Light of Improper Venue**

As discussed *supra*, in an action such as this, where federal subject-matter jurisdiction is based solely upon diversity, venue is governed by 28 U.S.C. § 1391.  As Pennsylvania is not Defendant's state of residence, venue may lie in this judicial district only if (a) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" here,  or (b) defendant is subject to personal jurisdiction and "there is no district in which the action may otherwise be brought."  See § 1391(a).  As also discussed *supra*, this Report has concluded that the instant action may be properly brought before the Oregon District Court and that, moreover, Defendant should not be subject to an exercise of specific personal jurisdiction by the Commonwealth of Pennsylvania.  Plaintiff's only remaining grounds for venue, *i.e.*, its assertion that a substantial part of the events giving rise to the claim occurred in Pennsylvania, must similarly fail.  For just as the events and issues underlying the parties' dispute as to the continuing validity of Strecker's stock options - *i.e.*, events and issues regarding the terms and circumstances of Strecker's June, 2000 termination, in Oregon, of Oregon employment - could not support personal jurisdiction in Pennsylvania, they cannot support venue.

No "substantial part" of the events giving rise to this declaratory judgment action occurred in Pennsylvania, as the action arises from ATI's contestation (its prior correspondence notwithstanding) of the terms and intended effects of events occurring in Oregon, and agreement(s) executed in Oregon, with regard to the termination of an Oregon employee by his Oregon employer.  In other words, Plaintiff's cause of action arises not from Defendant's

endeavors to exercise his stock options via notice to ATI in Pennsylvania, but from the alleged

expiration of those options pursuant to termination of Strecker's employment by reason other

than death, disability or retirement.[27]

For these reasons, the Report concludes that this Court is not a proper venue and, having

so concluded, it notes that the language of § 1406(a) directs, in the absence of proper venue, that

the Court *shall* dismiss the case or, if it is in the interest of justice, transfer it to another district

where it might have been brought.  Given the procedural posture of this case and that of the

related case pending in the District of Oregon, this Report recommends transfer rather than

---

27.  Cf. Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994)
(explaining that § 1391, as amended in 1990, "still favors the defendant in a venue dispute by
requiring that the events or omissions supporting a claim be 'substantial'" and noting that
"[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled
into a remote district having no real relationship to the dispute"); id. (noting the continuing
"viability" of the Supreme Court's explanation, in LeRoy v. Great W. United Corp., 443 U.S. 173
(1979), that "[i]n most instances, the purpose of the statutorily specified venue is to protect the
*defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial"); id.
at 295 (concluding that venue determination requires court "to look at the nature of the dispute"
and determining that, despite the plaintiff's allegations of defendant's obligation to pay fees in
and return advertising materials to Pennsylvania, "most, if not all, of the significant events
occurred in Michigan").

The Report notes that the Colorado District Court, in Qwest, *supra*, concluded that venue
was proper over a former executive employee where (a) the Qwest administrators' decision that
employee "was no longer entitled to his stock options due to the circumstances under which he
left Qwest"; and (b) "previous correspondence and communication with officials at Qwest
headquarters in Denver", leading to the parties' conflicting positions as to survival of the stock
option rights; were substantial relevant events sited in Colorado.  See 52 F.Supp.2d at 1206.  The
Report further notes, however, that in Qwest all employment-related and terms-of-separation-
related representations and decisions were made by Qwest in Colorado.  To the extent that Qwest
may be read to suggest that a Pennsylvania corporation's *decision* that an Oregon-resident
employee's stock options expired pursuant to termination agreement(s) negotiated with and
executed by an Oregon subsidiary in Oregon, is *itself* sufficient to confer venue in a
Pennsylvania District Court, this Report respectfully disagrees.  Cf. generally 59 A.L.R. Fed. 320
(noting that, in examining venue under § 1391, courts "look not to a single triggering event
prompting the action, but to the entire sequence of events underlying the claim").

dismissal.  See generally Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962) (stating that

"[n]ormally transfer will be in the interest of justice because [ ] dismissal of an action that could

be brought elsewhere is 'time-consuming and justice-defeating'").  See, e.g., Lawman Armor

Corp. v. Simon, 319 F.Supp.2d 499, ** (E.D. Pa. 2004) (proper course, upon determination that

court lacked personal jurisdiction over non-resident defendant, was to transfer to federal district

where jurisdiction existed and venue was proper); Telesis Mergers & Acquisitions v. Atlantis

Federal, 918 F.Supp. 823, 835 (D.N.J. 1996) (interests of justice dictated transfer under §

1406(a) rather than dismissal for lack of personal jurisdiction).  Cf. F/V Anna Maried, N.J. v.

F/V Anna Marie, 2006 WL 995411, *3, n. 5 (D.N.J. April 11, 2006) (noting that, under "§

1406(a), a district court, upon motion or sua sponte may transfer a case to a court of proper

jurisdiction when such a transfer is in the interest of justice" and that the court has "'broad

discretion in deciding whether to order a transfer'") (quoting Decker v. Dyson, 2006 U.S.App.

LEXIS 1272, *7 n.3 (3d Cir. Jan. 19, 2006) (quoting Caldwell v. Palmetto State Sav. Bank of

S.C., 811 F.2d 916, 919 (5th Cir. 1987)); Klugman v. Anderson, 1991 WL 171392, *2 (E.D. Pa.

Aug. 30, 1991) (concluding that court lacked personal jurisdiction and was improper venue, and

transferring action, sua sponte, under § 1406, to Washington District Court) (citing Barnes v.

Bonifacio, 605 F.Supp. 223, 225 (W.D. Pa. 1985));[28] id. (noting that any additional cost and/or

inconvenience to the plaintiff did "not entitle [the] court to disregard the well-established

---

28.  With respect to this Court's authority to transfer the case, sua sponte, under either of §§ 1406
or 1631, see also Imundo v. Pocono Palace, Inc., 2002 WL 31006143, *2 (D.N.J. Aug. 14, 2002).

jurisdictional requirements").[29]  Moreover, as our sister Court has recently noted, "the pendency of a related case in its early phases in the transferee forum is a powerful reason to grant a change of venue."  Elan Suisse Ltd. v. Christ, 2006 WL 3838237, *3 (E.D. Pa. Dec. 29, 2006) (citing Blanning v. Tisch, 378 F.Supp. 1058, 1061 (E.D. Pa. 1974)).

### ii.  Authority for Transfer under § 1404(a) or §1631, in the alternative, in light of absence of specific personal jurisdiction

As further noted *supra*, the Report further concludes that, even if venue were properly laid in this Court, discretionary transfer of this case under either § 1404(a) or § 1631 would be warranted.

In considering a transfer under §1404(a), in accordance with the express terms of the statute, the Court must evaluate the convenience of the parties, the convenience of the witnesses and the interests of justice.  See 1404(a).  And although "a plaintiff's choice of venue should not be lightly disturbed", the Court must also consider a variety of other private and public factors. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  The private interests include the parties' preferences, "the convenience of the parties as indicated by their relative physical and

---

29.  Cf. Societe Nouvelle Generale de Promotion v. Kool Stop Internat'l, Inc., 633 F.Supp. 153, 155 (E.D. Pa. 1985) ("If the lack of *in personam* jurisdiction is *in doubt*, sound judicial administration requires transfer to a district where it clearly could have been brought.") (emphasis added); Pippett v. Waterford Dev., LLC, 166 F.Supp.2d 233 (E.D. Pa. 2001) ("Where personal jurisdiction is questionable in one state, and a more appropriate forum exists elsewhere, transfer is proper.") (citing Schwilm v. Holbrook, 661 F.2d 12, 15 (3d Cir. 1981)); Walsh v. Chez, 2006 WL 2583623 (W.D. Pa. Sept. 6, 2006) (citing "outstanding issue of whether personal jurisdiction can be asserted" as particularly important factor in transfer under § 1404(a)).

financial condition", the unavailability of witnesses for trial,[30] and the situs of books and records. Id. (citing 15 Wright, Miller & Cooper § 3848-3853).[31]  See also American Littoral Soc. v. U.S. E.P.A., 943 F.Supp. 548, 550 (E.D. Pa. 1996); Molnlycke, 64 F. Supp.2d at 455 (concluding that transfer to New York was appropriate where many records were retained there, location was more proximate to witnesses who would be deposed, unquantified additional cost to plaintiff was insufficient to block transfer, and plaintiff did not indicate it would rather have case dismissed than transferred).  Applicable public factors include the enforceability of the judgment; factors that could make the trial easier, more expeditious, or less expensive; relative administrative difficulties pertaining to court congestion; "the local interest in deciding local controversies at home"; the public policies of the fora; and the familiarity of the trial judge with applicable state law in diversity cases.  Jumara, 55 F.3d at 879 (citing Wright, Miller & Cooper § 3854).[32]

---

30.  The convenience of the witnesses has been considered a "particularly significant factor." Kahhan v. City of Fort Lauderdale, 566 F.Supp. 736, 739 (E.D. Pa. 1983).  And Plaintiff's assertions of the importance of the Pennsylvania location of its stock option administration records and "material" administrative witnesses raises the reddest of red herrings.  See Lony v. E.I. Du Pong de Nemours & Co., 886 F.2d 628, 635 (3d Cir. 1989) (directing that, in evaluating ease of access to sources of proof, a district court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the [action]").

31.  The Court in Jumara expressly considered the "relative physical and financial condition of the parties".  Id. at 882.

32.  See also id. (noting that the courts should "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum") (citing Wright, Miller & Cooper, § 3847); Elan Suisse Ltd. v. Christ, 2006 WL 3838237, *3 (E.D. Pa. Dec. 29, 2006) (noting that district courts have broad discretion "to adjudicate motions for transfer accord to an 'individualized, case-by-case consideration of convenience and fairness'") (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

Although Plaintiff expounds at length regarding the significance of its own forum choice preference,[33] where "the Court rules that it does not have personal jurisdiction, this factor is of little relevance." Molnlycke, 64 F.Supp.2d at 455. In addition, a plaintiff's choice of forum is given significant weight as reflecting either its home forum or its dispute-resolution preference. See Am. Littoral Soc'y v. United States Envtl. Prot. Agency, 843 F.Supp. 548, 551 (E.D. Pa. 1996) (stating that plaintiff's choice of forum "should be given considerably less weight" when chosen forum is not plaintiff's home forum); Jumara, supra. In this case, Plaintiff's home forum is Delaware. Moreover, in the only document as to which it has been alleged the parties designated a choice of forum, that forum was Oregon, the place of Defendant's employment. While the matters at issue appear more likely to be governed by the terms of the oral and/or written agreements as to Strecker's termination than the terms of the Employment Agreement, it is not insignificant that the parties previously designated Oregon, and only Oregon, as their forum choice.[34] Cf. Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1994) (explaining that deference to plaintiff's choice of forum in filing suit is inappropriate where plaintiff has already freely contractually chosen an appropriate venue); cf. generally id. (noting that decision to transfer under § 1404(a) involves multi-factor test in which forum selection is one facet of

---

33. And Plaintiff is correcting in observing that the Third Circuit has held that a plaintiff's choice of forum should generally not be lightly disturbed. See Jumara, 55 F.2d at 879.

34. As also noted elsewhere in this Report, the parties' designated choice of law was Oregon in the Employment Agreement and Delaware in the Stock Option Agreement. Nothing in the parties' specified choices of forum or law gave Strecker any reason to expect to be hauled into Court in Pennsylvania; to the contrary. Compare Rosen, 374 F.Supp. at 420 (observing that "[i]n agreeing to [Pennsylvania choice of law] provision, defendants invoked the benefit and protection of the laws of Pennsylvania, and could reasonably have foreseen that any subsequent breach on their part would have consequences in Pennsylvania").

convenience-of-parties consideration).[35]  Moreover, and as discussed at length, *supra*, the

*underpinnings* of this action require that the Court look to the agreements and events

surrounding Strecker's termination of employment with Oremet-Wah Chang.  The parties dispute

*these* factual circumstances and the *concomitant* effects on Strecker's stock options.[36]

For all the reasons aforesaid, this Report thus further concludes Defendant has met its

burden of showing that "the convenience of the parties and witnesses, and the interest of justice

---

35.  Similarly, although Plaintiff repeats its assertion that this Court should retain jurisdiction of this case in accordance with the "first-filed rule", that rule does not mandate that a court retain jurisdiction over a declaratory judgment action filed preemptively in response to correspondence from opposing counsel, particularly under circumstances such as those *sub judice*.  See *e.g.*, Dorman Prods., Inc. v. Pontiac Coil, Inc., 2006 WL 2927307, *1 (E.D. Pa. 2006) (dismissing declaratory judgment action filed in response to letters threatening suit for patent infringement, and noting that "[e]xceptions to the general [first-filed] rule are not rare"); id. (identifying reasons for exception to rule as including "the convenience and availability of witnesses, or absence of jurisdiction over necessary or desirable parties, or the possibility of consolidation with related litigation") (citing Genetech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993); id. at *2 (discussing Serco Services Co. v. Kelley Co., 51 F.3d 1037 (Fed Cir. 1995), in which the Federal Circuit ruled that dismissal of first-filed suit was supported by (a) evidence that filing was anticipatory, and *independently* (b) presence of convenience factors - *i.e.*, location of witnesses and documents - favoring action subsequently filed in other forum); id. at *3 (noting, in addition, that the Court's concerns regarding personal jurisdiction would be "alleviated by deferring" to the subsequently-filed action).  See also Qwest Communications, 52 F.Supp.2d at  (holding that mere fact that declaratory judgment action, seeking nothing more than declaration of parties' rights and defendant's non-liability, is first-filed in different federal court, does not entitle that action to deference); Zokaites v. Land-Cellular Corp., 424 F.Supp.2d 824, 838 (W.D. Pa. 2006) ("Application of the rule is to be guided by 'what is right and equitable under the circumstances and the law' and the result warranted by reason and the sound exercise of judicial discretion.") (quoting Langnes v. Green, 282 U.S. 531, 541 (1931)).  Compare Plaintiff's Surreply at 3 (describing the "first-filed" rule as a "presumptive rule" that cannot be overcome).

36.  See Gallant v. Trustees of Columbia University in the City of New York, 111 F.Supp.2d 638, 647 (E.D. Pa. 2000) (noting that plaintiff's choice of forum is given less weight where "few, if any, of the operative facts took place in [that] forum . . . and the defendant has indicated strong preference for another district") (citing National Mortgage Network v. Home Equity Ctr., 683 F.Supp. 116, 119 (E.D. Pa. 1988)).

weigh in favor of [a] transfer" to the Oregon District Court, which is unquestionably the more proper and convenient forum.[37]  See, e.g., F/V Anna Maried, 2006 WL 995411 (transferring under § 1406(a), but noting that even if venue were proper, transfer would still be warranted under § 1404(a)).  The Report also concludes that, under Third Circuit case law, this action may be transferred under § 1631 in the alternative, owing to the absence of personal jurisdiction.  See discussion, supra; see also, e.g., Stamford Holding Co. v. Clark, 2002 WL 1040474 (E.D. Pa. May 23, 2002) (noting that "transfer would be appropriate" under § 1631, as well as § 1404(a), in the absence of personal jurisdiction) (citations omitted).

### 3.  Discretionary Dismissal under the Declaratory Judgment Act

Because the Report concludes that the Western District of Pennsylvania is an improper venue for this action, that the forum state lacks personal jurisdiction over Defendant, and that this case is more appropriately before the United States Court for the District of Oregon, it need not provide explication of the Court's rights of discretionary dismissal under the Declaratory Judgment Act.  This remainder of Defendant's Motion is rendered moot.

### III.  CONCLUSION

For the reasons set forth above, is respectfully recommended that the Defendant's Motion to Dismiss and Alternative Motion to Transfer be granted as to a transfer of this action, under 28 U.S.C. § 1406(a), to the United States District Court for the District of Oregon, owing to

---

37.  Elan Suisse Ltd. v. Christ, 2006 WL 3838237, *3 (E.D. Pa. Dec. 29, 2006) (citing Wallace v. Mercantile County Bank, 2006 U.S. Dist. LEXIS 82565, *9 (E.D. Pa. 2006); see also § 1404(a).

improper venue.  The Report notes that, in the alternative, the Court has the authority to transfer this action under 28 U.S.C. § 1404(a) or § 1631 owing to the forum state's lack of personal jurisdiction over Defendant and the balance of the private and public interests entailed.

In accordance with the Magistrates Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: February  12, 2007

cc:    Chief Judge Donetta W. Ambrose

        All Counsel of Record

37